It was in evidence on the trial that Joseph Kemp died in 1805, leaving a will which was duly admitted to probate, and William Kemp qualified as administrator with the will annexed at the November term of that year. The will, among other clauses, contained the following: "I give to my son, William Kemp, two negro women, Dorcas and Ruth, during his natural life, and at his death to his eldest lawful son, if he arrives to the age of maturity; but if he should have no son, or he should not arrive to full age, in that case, said negroes and their increase to be equally divided between my two sons, David and John Kemp." William Kemp took the negroes into possession, and died in December, 1836, without having had a child — David and John Kemp both died some years before William; and after the death of William the plaintiff took out letters of administration upon the estates of David and John; and in October, 1837, demanded the negro Ruth of the defendant, to which he replied that he had bought Ruth from William Kemp in the year 1810, and shortly after sold her to one Van, in the county of Duplin, and had never seen her since, nor had anything to do with her. Some time afterwards the plaintiff again demanded Ruth of the defendant, who replied, "You have just been nonsuited and you never will recover from me." Plaintiff said: "I will bet $50 I will gain the suit the next trial." Defendant said: "I will bet $500 you never do gain it"; and the plaintiff soon after brought this action. There was no evidence that the negro woman Ruth had been seen or heard of since the year 1811.
His Honor charged the jury "that to entitle the plaintiff to recover he must prove property in the negro; that unless Ruth was alive in December, 1836, when William Kemp died, the plaintiff had failed in making out his proof as to property; for that under the will, Ruth was to belong to David and John Kemp, or their representative, the plaintiff, at the death of William, and, although William was now dead, without having had a son, yet if Ruth died before William the remainder (469) to David and John never took effect: that whether Ruth was dead or alive in December, 1836, was a question of fact for the jury; that when a person is proved to have been alive the presumption is that she continues to live until the contrary appears; but this presumption ceases if she is not seen or heard of in seven years; and the presumption that she is dead gets stronger and stronger the longer it is after this that she is not heard of; that, supposing the plaintiff had proved property, he was then to prove a conversation by the defendant. The plaintiff, in the first place, alleged that a conversation was made out by the demand; that whether there was a conversion was a question of fact for the jury; that, to say nothing of the absence of proof that the defendant was in possession of the negro at the time of the demand there could be no conversion at that time, unless the negro was then alive, as *Page 369 
to which the same remarks were applicable as before made. The plaintiff, in the second place, alleged that a conversion was made out in 1810 by the admission that the defendant had then sold the negro; that if the defendant had merely bought William Kemp's life estate, and merely sold his interest there would be no conversion; but if he sold the negro out and out, that is, the whole estate, and the negro was alive at the death of William Kemp, then this act of the defendant would be an encroachment upon the rights of the plaintiff, which came into existence at the death of William, and would amount to a conversion; but this depended upon whether the negro was dead or alive at the death of William, about which they had already been charged." There was a verdict and judgment for the defendant, and the plaintiff appealed.
Upon examining the instructions which were given to the jury in this case, we discover no error of which the plaintiff has cause to complain.
There is an opinion, however, expressed in these instructions, which we apprehend to be erroneous, and which, had the verdict and judgment been in favor of the plaintiff might have justified a reversal of the judgment upon the appeal of the defendant. And we notice (470) this opinion now because we have reason to believe from our meeting with it not only here, but in a case tried before another learned judge, that it is of importance to check it before it receive a too general acceptance. His Honor was of opinion, and so charged the jury, that if the defendant, having purchased William Kemp's life estate in the negro woman Ruth, had, in 1810, sold the negro out and out, and subsequently William Kemp had died, living the said negro, then the persons entitled in remainder might have maintained an action of trover and conversion against the defendant, because of that conversion. We think they could not. To maintain this action it is indispensable that the plaintiff should show a conversion by the defendant of property whereunto the plaintiff, at thetime of that conversion, had a present right of possession. It is certain that an action could not have been brought for this alleged conversion during the life of William Kemp, because the right of possession had not then accrued to the ultimate proprietors. Gordon v. Harper, 7 Term., 9;Andrews v. Shaw, 4. Dev., 70. And it follows as clearly, we think, that it could not lie after the death of William Kemp, when the right of possession accrued, because there was no act of conversion thereafter. Upon the death of William Kemp, the rightful proprietors being entitled to the possession, might have demanded their property *Page 370 
from any person having possession thereof. And a withholding of it then would have been, on the part of such a person, an act of conversion, for which they might have brought trover. What redress they could have against the tenant for life, who by a previous alienation of the subject-matter of his and their property might have defeated the beneficial enjoyment of their right when the time for its enjoyment arrived, is a question well worthy of consideration. But trover could not be maintained against him.
The judgment below is affirmed with costs.
PER CURIAM. Judgment affirmed.
Cited: Cole v. Robinson, 23 N.C. 544; Brazier v. Ansley, 33 N.C. 14;Haughton v. Benbury, 55 N.C. 341; Jones v. Baird, 52 N.C. 154; Isler v.Isler, 88 N.C. 580; Ladd v. Byrd, 113 N.C. 471.
(471)